**WASHINGTON BUILDING SERVICES, INC. and Crown Supply, Inc., Appellants,**

v.

**UNITED JANITORIAL SERVICES, INC. and New Amsterdam Casualty Co., Appellees.**

No. 19231.

United States Court of Appeals District of Columbia Circuit.

Argued June 14, 1965.

Decided July 22, 1965.

Mr. Albert C. Boehm, Arlington, Va., with whom Mr. James C. Cacheris, Alexandria, Va., was on the brief, for appellants.

Mr. James R. Treese, Washington, D. C., with whom Messrs. Thomas S. Jackson, Robert M. Gray and John L. Laskey, Washington, D. C., were on the brief, for appellee, New Amsterdam Casualty Co.

Before FAHY, McGOWAN and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

This case involves an issue of attachment procedure. Crown Supply, Inc., plaintiff, filed a complaint for debt against Washington Building Services, Inc., hereafter referred to as appellant, which in turn filed a third-party complaint for indemnity of the same debt against appellee United Janitorial Services, Inc. (United), as third-party defendant. Appellant obtained the issuance of an attachment before judgment against credits of United on the basis of the affidavit of its president dated January 31, 1963. The affidavit set forth as grounds of the claim against United that its agreement with appellant of October 1, 1962, assumed liabilities owing to Crown, and added: "Affiant further says that the third party defendant, United Janitorial Services, Inc., has assigned, conveyed, disposed of or secreted, or is about to assign, convey, dispose of, or secret (sic) its property with intent to hinder, delay or defraud its creditors."

On February 9, United filed a bond for release of attachment and obtained an ex parte order from the court releasing the credits attached. The bond signed by appellees United and New Amsterdam Casualty Co. provided that they "hereby undertake * * * to abide by and perform the judgment of the Court in the premises to the sum of Sixteen Thousand Dollars ($16,000.00) which judgment may be rendered against all the parties whose names are hereto signed." Later in February 1963, United filed a motion to quash the attachment and for release of the bond, which motion was denied by the District Court.

Upon a trial of the issues judgment was rendered for plaintiff Crown against appellant and for appellant against appellee United for identical sums, $15,483.-09. The judgment, entered May 21, 1964, also contained a paragraph declaring that the attachment before judgment of appellant against United "is, and is hereby declared to be null and void" with the cause referred to the Auditor "to take proof of the damages sustained by [United] by reason of said wrongful attachment and to report thereon to the Court." The court held that the allegation in the affidavit filed by appellant that United is about to dispose of property with intent to defraud creditors was a mere conclusion, which was not an adequate foundation for the attachment. United's attorney requested that the surety be discharged, but the court ruled that a separate motion should be made to discharge the bondsman.

On November 20, 1964, United filed a suggestion of bankruptcy in the action and prayed a stay of further proceedings. On December 8, appellant moved for judgment against appellees United and New Amsterdam. The court, reciting that the attachment before judgment had been adjudged void by the judgment of May 21, 1964, denied appellant's motion for judgment and released appellee New Amsterdam from further liability. We think the judgment below must be reversed.

1. Sureties on a bond to release an attachment do not have freedom to peck away at faults in the attachment.[1] In National Surety Co. v. Poates, 43 App.

---

1. Cf. Annot. 89 A.L.R. 266 (1934).

D.C. 334 (1915), we held that the surety could not defend against payment on a judgment for the plaintiff on the ground that the attachment affidavits were defective in failing to make the allegation prescribed by statute that the defendant has debts owing to said defendant in the District. Justice Robb said that the bond had the effect of dissolution of the attachment, that its due execution implied a waiver both by defendant and sureties of mere irregularities, and that the surety was estopped, except upon a showing of fraud, to set up the defense of lack of grounds for the attachment.

■ This approach would conform to the reality that the surety's primary concern is not whether the defendant has a good defense, but whether he is good for the money. If the surety is ever to prevail on a defense based on a defect in the attachment such defense must be raised timely by the defendant in order to give plaintiff an opportunity to provide a curative amendment. Rieffer v. Home Indemnity Co., 62 A.2d 371 (D.C.Mun.App. 1948).

2. Appellees claim that the parties are bound by the May 21, 1964 determination that the attachment was "void." They rely on the doctrine of Pacific National Bank of Boston v. Mixter, 124 U.S. 721, 8 S.Ct. 718, 31 L.Ed. 567 (1888), that where the attachment is "void" the surety has no liability. In that case the Supreme Court was concerned with a federal statute expressly providing that no property of a national bank shall be attached before final judgment, see R.S. § 5242, and held that since such attachment was "actually prohibited by law" it was "an illegal and therefore a void attachment" which was a defense to any action on the surety bond given to release the attachment. The Supreme Court said (124 U.S. at 728–729, 8 S.Ct. at 722): "Objections can be made to an attachment issued on proper legal authority, which cannot be used as a defence to a bond taken under the statute for its dissolution; but if

there can be no lawful attachment, there can be no valid bond for its dissolution."

We hesitate to become enmeshed in abstract discussion as to what is "void" on the one hand and what is, on the other hand, merely "voidable" or mere "irregularities." Pacific National Bank of Boston v. Mixter, *supra*, seems to reflect the practical conclusion that unless the attachments prohibited by Congress were to be held so illegal as to undercut the dissolution bond, such attachments might well flourish in the face of the Congressional prohibition. But the Supreme Court made it clear that most objections to attachment papers would not involve application of this "void" doctrine.

3. It suffices to dispose of the present case that we see no irregularity in the attachment papers. In an affidavit of attachment there are two distinct parts: one relating to the cause of action and amount due, and the other relating to the grounds of attachment.

In Petroni v. Bass, 186 F.Supp. 759 (D.D.C.1960), it was held that plaintiff must set forth the grounds of his claim against defendant and not a mere conclusion. But the trial judge erred in extending his opinion in that case to rejection of a conclusory statement as to the grounds of attachment.

■ The conclusory statement in plaintiff's affidavit that defendant was about to dispose of property in fraud of creditors is all our statute requires as to the grounds for attachment. An affidavit "fully complies which states the ultimate facts substantially in its terms, without stating in connection therewith the probative facts which may be necessary to be shown in case of traverse." Wielar v. Garner, 4 App.D.C. 329, 332 (1894). This reading of our law is the approach of a majority of jurisdictions.[2]

■ That this is the meaning of the statute is made even more clear by the verbal revisions and rearrangement of the attachment before judgment provisions

**2.** The cases are gathered in Annot. 8 A.L.R.2d 578 (1949), Sufficiency of affidavit for attachment, respecting fraud

or intent to defraud, as against objection that it is a mere legal conclusion.

wrought on December 23, 1963, whereby the provisions formerly in 16 D.C.Code § 301 are now presented in Section 501.[3] The "scope of this revision is limited to improvements in arrangement and phraseology, without changing the substance of the law."[4] The statutory scheme contemplates that if the ultimate fact (or bare conclusion) set forth in the affidavit as a ground of attachment is denied, the defendant will file affidavits traversing the plaintiff's affidavit. 16 D.C.Code § 506 (formerly § 307). Provision is made whereby the court may try the matter expeditiously on three days notice, and before a jury if the court deems this expedient. On defendant's motion to quash plaintiff's attachment, the plaintiff has the burden of proving the facts alleged in his affidavit as a ground for suing out the attachment, and a mere suspicion that defendant is about to remove property from the District to defeat just demands against him will not suffice.[5]

■■ Abuse of the attachment procedure is safeguarded against by the requirement that plaintiff post a bond in an amount double the value of the claim "conditioned to make good to the defendant all costs and damages which he may sustain by reason of the wrongful suing out of the attachment." Such a suit for wrongful attachment is normally predicated on plaintiff's failure of success, and is limited to the actual damages sustained by defendant. Davis v. Peerless Ins. Co., 103 U.S.App.D.C. 125, 255 F.2d 534 (1958). But punitive damages may be recovered in case of malice and complete failure of probable cause. Defendant may recover for wrongful attachment even though plaintiff prevails on the merits, if plaintiff was not entitled to the attachment.[6]

■ There is no merit in the argument that the May 1964 ruling is res judicata that the attachment and bond are "void." The judge refused to release the surety on the bond at that time and only ordered such release in the order appealed from. Moreover, although the court entered judgment against appellant on the claim for a declaratory judgment, the court remanded for determination of damages by the auditor. Hence there was no appealable final decision.[7] This was not a case of a mere ministerial calculation by the auditor. A hearing and court order were required to reach a final decision. The court did not make the determination required by Rule 54(b) of the Federal Rules of Civil Procedure to provide appealability to an order adjudicating less than all claims. Accordingly we may consider objections to the May 1964 order.

Reversed and remanded.

3. Section 501 provides:
 "(c) The affidavit shall comply with the following requirements:
 "(1) show the grounds of plaintiffs' claim; * * *
 "(d) The affidavit shall also state one of the following facts with respect to defendant:
 "(1) defendant is a foreign corporation or is not a resident of the District, or has been absent therefrom for at least six months; * * *
 "(4) he has assigned, conveyed, disposed of, or secreted, or is about to assign, convey, dispose of, or secrete his property with intent to hinder, delay or defraud his creditors."
 In (d), unlike (c), plaintiff is not required to "show the grounds" of the ultimate facts.

4. See Revision Notes Annotating 16 D.C. Code § 501, (Supp. IV, 1965).

5. Daniels v. Solomon, 11 App.D.C. 163, 174–175 (1897); Mackenzie v. Crouse, 35 App.D.C. 291 (1910).

6. See 5 Am.Jur.2d *Attachment* § 615 (1963). Cf. Annot. 25 A.L.R. 579 (1923); Annot. 71 A.L.R. 1458 (1931), on recoverability of attorney's fees as damages.

7. Latta v. Kilbourn, 150 U.S. 524, 539, 14 S.Ct. 201, 37 L.Ed. 1169 (1893); Pang-Tsu-Mow v. Republic of China, 91 U.S.App.D.C. 324, 328, 201 F.2d 195, 199 (1952), cert. denied 345 U.S. 925, 73 S.Ct. 784, 97 L.Ed. 1356 (1953).